**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION**

| | | |
|---|---|---|
| **Jerry Michael Puckett**, | § | |
| **Andrew Joseph Puckett**, and | § | |
| **George Robert Puckett** | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | |
| | § | **Case No. 2:23-cv-00123-DCLC** |
| **Unicoi County, Tennessee,** | § | |
| **City of Erwin, Tennessee** | § | **JURY TRIAL REQUESTED** |
| **Michael Hensley,** | § | |
| **Jonathan "Frank" Rogers,** | § | |
| **Tony Buchanan, and** | § | |
| **John and Jane Does No. 1-10** | § | |
| | § | |
| *Defendants*. | | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

To the Honorable Court:

1.      This is a case about civil rights violations and intentional discrimination against Plaintiff Andrew Puckett on the basis of his mental health disabilities by local law enforcement officials in Unicoi County and the City of Erwin, Tennessee. The evidence in this lawsuit will reveal a sinister and illegal conspiracy—carried out over many years and continuing to the present day—to chase Andrew Puckett forever away from Unicoi County by targeting him with malicious criminal prosecutions and abusive law enforcement practices. This lawsuit will reveal that the conspiracy against Andrew began with animus directed specifically at his mental disabilities; and the evidence will show that participants in this conspiracy have been motivated throughout by a specific intent to discriminate against Andrew on the basis of his mental disabilities. In the concerted effort to run Andrew out of Unicoi County because law enforcement does not want "his

kind of people" (*i.e.* persons with visible signs of mental disability) to live there, Defendants have illegally discriminated against Andrew in violation of Title II of the American's with Disabilities Act ("ADA"), and Defendants also have infringed Andrew's federal constitutional civil rights in violation of 42 U.S.C. §1983 and §1985.

2.     This case also is about retaliation. The evidence will show that Defendants maliciously retaliated against Plaintiff Jerry Puckett (Andrew's brother, legal guardian, and primary caretaker) and Plaintiff George Robert Puckett (Andrew's nephew and secondary caretaker) because each of them had provided caretaker assistance to Andrew and had assisted him in various efforts to defend against the malicious and discriminatory criminal charges. Defendants extended their scheme to include false criminal charges filed against each of Jerry and George, each without probable cause, with each charge dismissed or abandoned later. Defendants' actions violated federal statutes that prohibit such retaliation (43 U.S.C. §12203(a)) and also infringed Jerry's and George's federal constitutional rights in violation of 42 U.S.C. §1983 and §1985.

3.     This is a lawsuit about the responsibility of Defendant Unicoi County and Defendant City of Erwin for the intentional discrimination and civil rights violations alleged in this complaint. The evidence will show that policymakers within both Unicoi County and City of Erwin have long known of these discriminatory law enforcement actions and civil rights violations against Plaintiffs and have done nothing. Indeed, as the chief law enforcement officer for Unicoi County, Defendant Sheriff Michael Hensley himself has essentially declared an official county policy or official custom of maliciously prosecuting members of the Puckett family. Defendants Unicoi County and City of Erwin have acted with deliberate indifference at least (if not outright intent), and each must be held responsible for violation of each Plaintiff's federal statutory and constitutional rights.

## I.  PARTIES

4.     Plaintiff Jerry Michael Puckett (referred to herein as "Jerry Puckett" or "Jerry") is an adult natural person who resides (and who at all relevant times has resided) at his home in Flag Pond, Tennessee, within the jurisdictional boundaries of Unicoi County, Tennessee. Jerry is the duly appointed legal conservator of his brother, Plaintiff Andrew Joseph Puckett. Jerry is the biological and custodial father of Plaintiff George Robert Puckett, who was a minor child at the time this lawsuit was filed and who now is a legal adult.

5.     Plaintiff Andrew Joseph Puckett (referred to herein as "Andrew Puckett" or "Andrew") is an adult natural person who resides (and who at all relevant times has resided) at his home in Flag Pond, Tennessee, within the jurisdictional boundaries of Unicoi County, Tennessee.

6.     Plaintiff George Robert Puckett (referred to herein as "George Puckett" or "George") is the biological child of his custodial parent, Jerry Puckett. George was a minor child at the time this lawsuit was filed and is now a legal adult.  George resides (and at all relevant times has resided) at his home in Flag Pond, Tennessee, within the jurisdictional boundaries of Unicoi County, Tennessee.

7.     Defendant Unicoi County, Tennessee is a local county government organization pursuant to the constitution and laws of the State of Tennessee. Defendant Unicoi County previously has been served with process in this lawsuit and has appeared in the case via counsel.

8.     Defendant City of Erwin, Tennessee is a local city municipal government organization pursuant to the constitution and laws of the State of Tennessee. Defendant City of Erwin previously has been served with process in this lawsuit and has appeared in the case via counsel.

9.     Defendant Michael Hensley is (and at all relevant times has been) the Sheriff of

Unicoi County, Tennessee. Defendant Hensley also is a resident of Unicoi County who previously has been served with process in this lawsuit and has appeared in the case via counsel.

10.     Defendant Jonathan "Frank" Rogers is (and at all relevant times has been) the Chief Deputy Sheriff of Unicoi County, Tennessee. Defendant Rogers also is a resident of Unicoi County who previously has been served with process in this lawsuit and has appeared in the case via counsel.

11.     Defendant Tony Buchanan is (and at all relevant times has been) a Detective and Captain employed by the City of Erwin by and through the Erwin Police Department. Defendant Buchanan also is a resident of Unicoi County who previously has been served with process in this lawsuit and has appeared in the case via counsel.

12.     Defendants John and Jane Doe Nos. 1-10 are other current and/or former employees of Defendant Unicoi County and/or Defendant City of Erwin with identities currently unknown to Plaintiffs. On information and belief, each Defendant John and Jane Doe Nos. 1-10 conspired with one or more of the named Defendants and/or otherwise participated in and facilitated the wrongful and discriminatory conduct against Plaintiffs alleged herein.

## II.     JURISDICTION AND VENUE

13.     This Court has federal question subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ § 1331 and 1343. Plaintiffs assert causes of action pursuant to 42 U.S.C. §§1983, 1985 and 42 U.S.C. §§12132, 12203(a) that arise under federal law.

14.     Defendant Unicoi County is subject to the general personal jurisdiction of this Court because Unicoi County is a county subdivision of the State of Tennessee located within the federal Eastern District of Tennessee. Defendants Michael Hensley, Jonathan Rogers and Tony Buchanan are each subject to the general personal jurisdiction of this Court because each of them

resides in, works in, and has other substantial and regular business contacts with the federal Eastern District of Tennessee.

15.     This Court has specific personal jurisdiction over each Defendant because this case arises from the conduct of each Defendant that occurred entirely or substantially within the federal Eastern District of Tennessee.

16.     Venue for this case and the asserted causes of action are proper in the Eastern District of Tennessee, Greeneville Division, pursuant to 28 U.S.C. § 1391(b) because all or a substantial portion of the events or omissions giving rise to each Plaintiff's claims occurred in the Eastern District of Tennessee, Greeneville Division.

### III.     FACTUAL ALLEGATIONS

**A.      Plaintiff Andrew is an Adult Who Has Suffered from Severe Mental Disabilities for Many Years. Plaintiff Jerry is Andrew's Legal Guardian and Primary Caretaker.**

17.     For many years, Plaintiff Andrew Puckett has suffered from schizophrenia, bipolar disorder, and antisocial disorder—among other debilitating mental health conditions. Andrew was first diagnosed with these conditions in or about 1999 when he was involuntarily institutionalized at Lakeshore Mental Hospital in Knoxville, Tennessee. Since that time, Andrew has spent significant portions of his adult life in an institutional setting for treatment of his mental health disorders. Since 1999, Andrew has continuously been prescribed medications for treatment of his mental health conditions. When Andrew is properly medicated, he has demonstrated significant success living outside of an institutional setting, although he requires substantial daily assistance from family caretakers for management of his medications and for assistance with his financial and daily life affairs.

18.     Andrew's mental health conditions are severe enough that they substantially interfere with his ability to hold a job or perform basic functions of daily life. Andrew has been

recognized as "disabled" for purposes of federal Social Security Disability Insurance since in or about 2001, and Andrew has received monthly social security disability income payments on account of his mental health disability ever since.

19.     Andrew has been under the care of a legal conservatorship since at least 2002 when Andrew's parents (George Donald Puckett and Nancy Puckett) were court-appointed as his co-conservators. At that time, Andrew was placed under a full conservatorship, with his parents having full legal authority over all of Andrew's medical, financial, legal, and personal affairs.

20.     In or about 2011, Jerry Puckett (Andrew's brother) became Andrew's conservator for all Andrew's affairs. At that time, George Donald Puckett had passed away and Nancy Puckett had moved to Texas to live closer to other family members. Ever since Jerry became Andrew's conservator, Jerry has continued to manage Andrew's money and property. Jerry also has legal authority over Andrew's medical, legal, and personal affairs. As conservator, Jerry has fiduciary obligations that he owes to Andrew to protect Andrew's best interests.

21.     Because of his mental disabilities, Andrew is not capable of living fully independently. He requires daily assistance with his personal affairs, particularly management of his medications. Over the years, Andrew has tried living in an adult group-home setting, but he was unable to live in that environment due to his antisocial disorders and other mental health conditions. Andrew is best suited to a rural environment where he can mostly keep to himself.

**B.     Plaintiffs Own Real Property in Unicoi County on Which They Have Lived for Many Years. They Have Deep Roots in Unicoi County.**

22.     Andrew and Jerry both have lived in Northeast Tennessee for essentially their entire lives. Each of them was born and raised in Kingsport, Tennessee. Andrew and Jerry each graduated from Dobyns-Bennett High School in Kingsport.

23.     Jerry first lived in Unicoi County in or about 2011. At that time, Jerry had started a

metal recycling business in Erwin called Erwin Iron and Metal. Jerry rented an apartment in Erwin where he lived for approximately one year.

24.     In or about 2012, Jerry and Andrew sold a house that they owned in Johnson City, TN that had been left to them by their grandmother when she had died. They used the proceeds from the sale of their grandmother's house to buy a 15-acre parcel of land in Flag Pond, Tennessee, (in Unicoi County) with the intention of making this land their homestead. Shortly after purchasing the Flag Pond land, Jerry moved from his apartment in Erwin to Flag Pond. Andrew briefly lived in the Erwin apartment until the end of the lease, after which Andrew (in or about 2013) also moved to Flag Pond to live on the land that he had purchased with his brother (who also was Andrew's legal conservator by that time).

25.     The Flag Pond land is an ideal homestead for Jerry and Andrew. The property is divided in half by a public road. Jerry lives on one side of the road, Andrew lives on the other. The land is in a remote rural setting with good access to hiking on the Appalachian Trail and public land in the Cherokee National Forest. This land provides a setting where Jerry can be close enough to Andrew to serve as Andrew's conservator and assist with daily activities, but also provides them enough space and distance that they can each have a reasonable degree of privacy.

26.     Over the years, Jerry and Andrew have spent considerable effort and money to make improvements to their Flag Pond land and their homes. They have now lived on the property for more than ten years. Their Flag Pond land in Unicoi County is their homestead.

27.     Andrew's mental health condition has slowly and gradually improved while he lives in this environment. He mostly keeps to himself on his own land, with occasional trips into the town of Erwin to buy groceries and other supplies. In recent years, he has not had altercations with his Flag Pond neighbors or drawn any complaints from his Flag Pond neighbors.

28.     In or about 2015, Nancy Puckett moved from Texas back to Tennessee. She rented an apartment in Erwin, TN to be close to Jerry and Andrew and her grandson George Robert Puckett. Nancy continued to live in Erwin until she passed away on December 5, 2022, at the Unicoi County Memorial Hospital.

29.     Jerry Puckett (along with his mother Nancy before she died) developed deep community roots in Unicoi County and the City of Erwin. Jerry was a local business owner in Erwin for several years. He operated a hostile for hikers coming off the Appalachian Trail from his Flag Pond land for a few seasons. Jerry and Nancy regularly attended churches in Erwin and Unicoi County. Plaintiff George Puckett attended public schools in Erwin.

30.     Plaintiffs Jerry Puckett, Andrew Puckett, and George Puckett consider Unicoi County to be their home, and each of them has every intention of continuing to live and reside on their homestead land in Flag Pond, TN.

## C.     Local Law Enforcement in Unicoi County and the City of Erwin Engage in an Illegal Conspiracy of Malicious Prosecution Directed at Andrew Puckett

31.     Andrew's mental health conditions frequently cause him to appear and act in abnormal ways, such as talking to himself or speaking nonsense words to others. While Andrew was living in an apartment in Erwin in or about 2012-2013, Andrew was the subject of various police complaints that, on information and belief, were based primarily on Andrew exhibiting symptoms of his mental illness. In response to these complaints, local law enforcement began aggressively to look for criminal charges to file against Andrew at any opportunity. On information and belief, local law enforcement brought and pressed charges against Andrew that were not supported by probable cause and/or charges that could be sustained with actual evidence in court.

32.     Some of the frivolous criminal charges brought against Andrew were initiated by the Erwin Police Department and brought in the Erwin Municipal Criminal Court. Other frivolous

charges brought against Andrew were initiated by the Unicoi County Sheriff's Department and brought in the Unicoi County General Sessions Criminal Court. On information and belief, however, the prosecutor's office and the presiding judge (or presiding court) were the same. On information and belief, the First Judicial District Attorney's Office of Tennessee handled prosecutions of Andrew in both the Erwin Municipal Criminal Court and in the Unicoi County General Sessions Criminal Court; and, on information and belief, the same judge presided over both courts.

33.     On information and belief, over time, employees of the First Judicial District Attorney's Office (including at least Assistant District Attorney Todd Hull and ADA Ryan Curtis), and employees of the Unicoi County Sheriff's Office (including at least Sheriff Michael Hensley and Chief Deputy Sheriff Jonathan "Frank" Rogers), and employees of the Erwin Police Department (including at least Captain Tony Buchanan) all began to conspire together to perpetuate a scheme of harassing Andrew Puckett with malicious criminal prosecutions in an effort to run Andrew out of his home in Unicoi County. As discussed further below, on information and belief this conspiracy was fully formed no later than 2016, and likely much earlier.

34.     Starting in or about 2013, local law enforcement began a long pattern and practice of initiating criminal prosecutions against Andrew Puckett that were subsequently dismissed when prosecutors were required to present actual evidence in court. By virtue of their contact with Andrew in connection with the criminal charges described in paragraphs 34(a)-34(f) below, local law enforcement became very familiar with: (1) the nature and severity of Andrew's mental illness and (2) the fact that Jerry serves as a primary caretaker for Andrew. On information and belief, at least one or more of the charges identified in paragraphs 34(a)-34(f) below were brought without probable cause and/or with knowledge by law enforcement and prosecutors that such charges could

not be sustained with evidence in court.

      a.     On or about March 11, 2013, Andrew was arrested by the Erwin Police Department on a charge of criminal Stalking. On information and belief, the only basis for Andrew's arrest was that a person who first saw Andrew in Erwin subsequently also saw Andrew in Kingsport. Andrew was arrested and charged with Stalking. The criminal charge was brought in the Erwin Municipal Criminal Court, and the charge was dismissed by the First Judicial District Attorney's Office on or about August 29, 2013. This criminal charge is identified by Charge Number 107416537 and Charge Tracking Number 860000010533 in the official criminal records of the State of Tennessee.

      b.     On or about October 13, 2013, Andrew was arrested by the Unicoi County Sheriff Department and charged with Domestic Assault. On information and belief, the charge arose after a neighbor had called local law enforcement to ask for a wellness-check on Andrew and Jerry after the two of them were observed in a physical altercation on their own property.  This criminal charge was brought in Unicoi County General Sessions Criminal Court, and the charge was dismissed by the First Judicial District Attorney's Office on or about November 22, 2013. This criminal charge is identified by Charge Number 107781460 and Charge Tracking Number 860000011080 in the official criminal records of the State of Tennessee.

      c.     On or about March 27, 2014, Andrew was arrested by the Unicoi County Sheriff Department and charged with Failure to Appear in Court. This criminal charge was brought in Unicoi County General Sessions Criminal Court, and the charge was dismissed by the First Judicial District Attorney's Office on or about March 27, 2014. This criminal charge is identified by Charge Number 108062913 and Charge Tracking Number 860000011523 in the official criminal records of the State of Tennessee.

d.     On or about May 29, 2015, Andrew was arrested by the Unicoi County Sheriff Department and initially charged with Simple Assault. A prosecutor from the First Judicial District Attorney's Office subsequently told Jerry that the prosecutor's office intended to increase the charge to felony Aggravated Assault in hopes that this would increase the chances that the State of Tennessee and/or Medicaid would agree to pay for a mental health evaluation for Andrew. The prosecutor did in fact increase the charge to Felony Aggravated assault, bringing the charge in the Unicoi County General Sessions Criminal Court. On information and belief, Andrew was arrested and charged with Simple Assault, with the charge later elevated to Aggravated Assault, without probable cause. On information and belief, Andrew was sent to a mental health facility in Chattanooga, Tennessee for a mental health evaluation regarding his mental competency to stand trial in connection with this charge. On information and belief, the Chattanooga mental facility determined that Andrew was not mentally fit to stand trial. On information and belief, the Chattanooga mental health facility communicated the results of Andrew's mental health examination to persons within the First District Prosecutor's office. On information and belief, the results of Andrew's Chattanooga mental health examination were shared with at least some of the Defendants to the lawsuit. This criminal charge was later dismissed by the First Judicial District Attorney's Office on or about November 19, 2015. This criminal charge is identified by Charge Number 108823018 and Charge Tracking Number 860000012962 in the official criminal records of the State of Tennessee.

e.     On or about August 18, 2015, Andrew was arrested by the Unicoi County Sheriff Department and charged with Vandalism Under $500. The charge was brought in Unicoi County General Sessions Criminal Court. This criminal charge was later dismissed by the First Judicial District Attorney's Office on or about November 19, 2015. This criminal charge is

identified by Charge Number 108978852 and Charge Tracking Number 860000013285 in the official criminal records of the State of Tennessee.

   f. On or about July 23, 2016, Andrew was arrested by the Unicoi County Sheriff Department and charged with Aggravated Criminal Littering. The charge arose from an incident in which Defendant Rogers had come to Plaintiffs' property to investigate an incident that literally had nothing to do with Andrew. During this visit to Plaintiffs' property, Defendant Rogers claims to have observed a toilet and bathtub in shallow creek water <u>on Plaintiffs' property</u>. On information and belief, Andrew was arrested and charged with Aggravated Criminal Littering without probable cause because: (1) even taken at face value, Defendant Rogers' narrative description of events does not meet the elements of littering and/or criminal littering under Tennessee law, and (2) it was well known at the time (to Rogers, to persons in the First District prosecutors office, and to others) that Andrew did not have the mental capacity required for the intent element of the charged crime and that Andrew was not mentally fit to stand trial. This criminal charge was brought in Unicoi County General Sessions Criminal Court, and the charge was dismissed by the First Judicial District Attorney's Office on or about November 3, 2016. On information and belief, the charge was dismissed due to lack of supporting evidence and in light of the prosecutor's knowledge of Andrew's diminished mental capacity. This criminal charge is identified by Charge Number 109648079 Charge Tracking Number 860000014378 in the official criminal records of the State of Tennessee.

   35. While the criminal charge for Aggravated Criminal Littering was pending against Andrew in 2016, the First Judicial District Assistant Attorney Ryan Curtis made a plea bargain offer to Andrew. Assistant DA Curtis's offer was simple: if Andrew Puckett would agree to sell his land and move away from Unicoi County and never return, the criminal charges would be

dropped. To apply additional pressure, DA Curtis stated that if Andrew did not accept the plea agreement, DA Curtis personally would call the U.S. Environmental Protection Agency and and file a report against Andrew. The offer of a plea bargain and threat of an EPA report were made by DA Curtis to Andrew's court-appointed public defender, attorney Carl Roberts, Jr.

36.     Mr. Roberts is an experienced criminal defense attorney. When he relayed DA Curtis's plea bargain offer and threat to file an EPA report to Andrew and Jerry, Mr. Roberts stated that he had never seen or heard of such an offer in any previous criminal case. Andrew rejected the plea bargain offer at the insistence of his attorney and conservator. Andrew did not intend to leave his home in Unicoi County, and he was innocent of the manufactured Aggravated Criminal Littering charge. As alleged above, the First Judicial District Attorney's Office subsequently dropped the charge altogether after Andrew rejected the plea bargain offer. On information and belief, neither DA Curtis nor anyone else at the First Judicial District Attorney's Office ever filed the threatened report with the U.S. EPA.

37.     DA Curtis's plea bargain offer and threat to file an EPA report against Andrew conclusively demonstrate that, at least by 2016 (if not much before), the illegal conspiracy to subject Andrew Puckett to malicious criminal prosecutions had been fully formed.

a.     DA Curtis's plea offer and EPA threat reveal the true object and purpose of the conspiracy. At least by 2016 (if not sooner) participants in the conspiracy were conspiring to force Andrew to move away from Unicoi County. At least by 2016 (if not sooner) participants in the conspiracy had agreed to use malicious prosecution and abusive law enforcement practices to achieve the aim of their conspiracy.

b.     DA Curtis's offer and threat, along with the long pattern and practice of subjecting Andrew to aggressive law enforcement practices and/or malicious prosecutions, reveal

the participants in the conspiracy. At all times since 2016 (if not before), participants in the conspiracy included, without limitation: employees of the First Judicial District Attorney's Office, along with employees of the Unicoi County Sheriff's Department, along with employees of the Erwin Police Department. The employees of the First Judicial District Attorney's Office involved in the conspiracy include at least Assistant DA Ryan Curtis, Assistant DA Todd Hull, and on information and belief other employees. The employees of the Unicoi County Sheriff's Department involved in the conspiracy include at least Defendant Sheriff Michael Hensley, Defendant Chief Deputy Sheriff Jonathan "Frank" Rogers, and on information and belief other employees. The employees of the Erwin Police Department involved in the conspiracy include at least Defendant Captain Tony Buchannan, and on information and belief other employees.

        c.     Participants in the conspiracy have committed multiple and numerous overt acts in furtherance of their conspiracy. On information and belief, employees of the First Judicial District Attorney's Office have made charging decisions to bring malicious and frivolous charges against Andrew without probable cause, have relied upon and presented to the court known false evidence in support of the malicious and frivolous charges, and have taken other overt actions in furtherance of the conspiracy. On information and belief, employees of the Unicoi County Sheriff's Department have purposefully undertaken biased investigations for the purpose of manufacturing false charges against Andrew, have caused and encouraged witnesses to provide false testimony in support of false charges against Andrew, have themselves provided false information in support of false charges against Andrew, and have taken other overt actions in furtherance of the conspiracy. On information and belief, employees of the Erwin police department have purposefully undertaken biased investigations for the purpose of manufacturing false charges against Andrew, have themselves provided false information in support of false

charges against Andrew, and have taken other overt actions in furtherance of the conspiracy.

38.     Following dismissal of the false Aggravated Criminal Littering charge against Andrew, local law enforcement continued their longstanding pattern and practice of harassing Andrew with malicious criminal prosecutions in furtherance of their illegal scheme and conspiracy to drive Andrew away from Unicoi County—a scheme and conspiracy that continues to the present day.

a.     On or about December 31, 2016, Andrew was arrested by the Unicoi County Sheriff Department and charged with Vandalism. On information and belief, Andrew was arrested and charged with Vandalism without probable cause because: (1) his alleged actions did not meet the elements of the charged crime and (2) persons within the First District prosecutor's office and persons acting on behalf of Unicoi County knew that Andrew lacked the mental capacity to form the required intent element of the charged crime and that Andrew was mentally unfit to stand trial. On information and belief, the complaining witness provided an inaccurate description of the events because Andrew did not throw "rocks" at her vehicle and Andrew did not "damage" the vehicle and did not cause "scratches on the driver door." On information and belief, Andrew had thrown M&M candies that accidentally hit the vehicle, causing no damage. On information and belief, the responding officer encouraged and/or assisted the complaining witness to provide an inaccurate narrative in an effort to manufacture false charges against Andrew. The criminal charge was brought in Unicoi County General Sessions Criminal Court, and the charge was subsequently dismissed by the First Judicial District Attorney's Office. On information and belief, the charge was dropped due to lack of supporting evidence and in light of the prosecutor's knowledge of Andrew diminished mental capacity. This criminal charge is identified by Charge Number 109942562 and Charge Tracking Number 860000016247 in the official criminal records of the

State of Tennessee. The date of dismissal for this Vandalism charge is not reflected in the official State of Tennessee criminal records at this time for reasons unknown.

b.     On or about June 3, 2017, Andrew was arrested by the Unicoi County Sheriff Department and charged with Aggravated Criminal Trespassing.  On information and belief, Defendant Rogers provided an Affidavit of Complaint in support of this charge that contained a false or inaccurate narrative description of events. On information and belief, Defendant Rogers provided this false or inaccurate narrative description for the purpose of manufacturing false charges against Andrew. On information and belief, Andrew was arrested and charged with Aggravated Criminal Trespassing without probable cause because: (1) his alleged actions did not meet the elements of the charged crime and (2) persons within the First District prosecutor's office and persons acting on behalf of Unicoi County knew that Andrew lacked the mental capacity to form the required intent element of the charged crime and that Andrew was mentally unfit to stand trial. The criminal charge was brought in Unicoi County General Sessions Criminal Court, and the charge was subsequently dismissed by the First Judicial District Attorney's Office. On information and belief, the charge was dropped due to lack of supporting evidence and in light of the prosecutor's knowledge of Andrew diminished mental capacity. This criminal charge is identified by Charge Number 110251606 and Charge Tracking Number 860000016777 in the official criminal records of the State of Tennessee. The date of dismissal for this Aggravated Criminal Trespassing charge is not reflected in the official State of Tennessee criminal records at this time for reasons unknown.

c.     On or about February 11, 2019, Andrew was arrested by the Unicoi County Sheriff Department and charged with Domestic Assault. The charge arose from an incident in which Andrew had a loud verbal argument with his mother Nancy in Wal-Mart that resulted in

someone calling the police. Andrew was arrested and charged with Domestic Assault even though

Nancy did not complain of any physical assault or desire to press criminal charges against her son.

On information and belief, Cpl. Andy Slagle provided an Affidavit of Complaint in support of the

charge that contained a false and/or inaccurate narrative description of the events. On information

and belief, Andrew was arrested and charged with Domestic Assault without probable cause

because: (1) his alleged actions did not meet the elements of the charged crime and (2) persons

within the First District prosecutor's office and persons acting on behalf of Unicoi County knew

that Andrew lacked the mental capacity to form the required intent element of the charged crime

and that Andrew was mentally unfit to stand trial. The criminal charge was brought in Unicoi

County General Sessions Criminal Court, and the charge was subsequently dismissed by the First

Judicial District Attorney's Office. On information and belief, the charge was dismissed due to

lack of supporting evidence and in light of the prosecutor's knowledge of Andrew diminished

mental capacity. This criminal charge is identified by Charge Number 111391993 and Charge

Tracking Number 860000018438 in the official criminal records of the State of Tennessee. The

date of dismissal for this Domestic Assault charge is not reflected in the official State of Tennessee

criminal records at this time for reasons unknown.

       d.       In or about October 2020, Andrew was arrested by the City of Erwin Police

Department and charged with the crime of Hoax Bombing. On information and belief, the charge

arose from an incident in which Andrew was taken to Unicoi County Memorial Hospital by his

mother Nancy for treatment due to a mental health episode. Andrew entered the hospital with a

shoe box containing an odd assortment of personal items—a pair of shoes and socks, personal

grooming items, and a hardware component of a home electronic thermostat device. Andrew,

likely disoriented because of his mental health episode, did not check himself into the hospital for

an evaluation. Instead, he used the hospital's public restroom, left his shoe box of personal items in the bathroom by mistake or carelessness, and then left the hospital altogether. When hospital staff found the shoebox, they reported it to the police. Andrew was subsequently arrested and charged with leaving a "hoax bomb" at the hospital. On information and belief, Andrew was arrested and charged for Hoax Bombing without probable cause because: (1) his alleged actions did not meet the elements of the charged crime and (2) persons within the First District prosecutor's office and persons acting on behalf of the City of Erwin knew that Andrew lacked the mental capacity to form the required intent element of the charged crime and that Andrew was mentally unfit to stand trial. The criminal charge was brought in the General Sessions Court for Unicoi County. The charge was subsequently dismissed by the First Judicial District Attorney's Office in or about October 2022. On information and belief, the charge was dismissed due to lack of supporting evidence and in light of the prosecutor's knowledge of Andrew diminished mental capacity. For reasons unknown, this criminal charge against Andrew Puckett is not currently reflected in the official criminal records of the State of Tennessee. The case is *State of Tennessee v. Andrew* Puckett, Docket No. 63366 in the General Sessions Court for Unicoi County, Erwin, Tennessee.

39.     While the Hoax Bombing charges were pending, Andrew Puckett was questioned and interrogated by employees of the Erwin Police Department, particularly Captain Tony Buchanan. During Buchanan's interrogation (which was recorded on video), Andrew was barely able to speak in comprehensible sentences. From Andrew's demeanor during the interrogation, it would have been apparent to any competent investigator that Andrew was having a mental health episode and needed immediate medical attention. However, neither Buchanan nor anyone else at the Erwin Police Department took any steps to ensure that Andrew received the medical attention

he needed. Instead, Andrew was incarcerated for many days for pretrial detention on the Hoax Bombing charge. At the time, Andrew was mentally unfit to be kept in a general population incarceration setting, and Andrew suffered severe emotional distress and injury from his incarceration as a result. He never received any mental health evaluation or treatment during this incarceration. Eventually Andrew was released on a bond. Not long after Andrew was released from pretrial detention, his mental health deteriorated to the point that he was required to spend approximately two weeks in an institutional setting to receive intensive psychiatric treatment and care at Woodridge Hospital in Johnson City, TN.

40.     In addition to the malicious prosecutions listed above, Andrew also has been frequently harassed by abusive law enforcement practices. Andrew has long been treated as one of the "usual suspects" in Unicoi County. When a crime with an unknown perpetrator is reported, local police frequently start looking for a connection to Andrew. On several occasions, local police have shown up at Andrew's residence in the middle of the night and demanded entrance to make sure Andrew is sleeping in his bed when a local crime without a suspect has been reported. Andrew is frequently followed and surveilled by law enforcement when he makes trips into the town of Erwin for groceries or supplies. Local authorities have made statements to Andrew and aggressive demonstrations of force to intimidate Andrew. On information and belief, Defendants Hensley, Rogers, and Buchanan each have made false and derogatory statements about Andrew, and also have taken other actions, in an effort to cause witnesses to make false complaints or give false testimony against Andrew in support of frivolous criminal charges.

41.     Defendants Hensley and Rogers each have made open and affirmative statements to members of the community and other law enforcement officials regarding their intent to run Andrew out of town. They have made no secret of the fact that they do not want Andrew's "kind

of people" (*i.e.* people with visible signs of mental disability) living in Unicoi County, and that they intend to run Andrew out of Unicoi County by using aggressive law enforcement tactics against him. On information and belief, Defendant Buchanan has made similar affirmative statements to others.

42.     The scheme and conspiracy to use malicious prosecution and abusive law enforcement practices against Andrew in an effort to run him out of Unicoi County continues to the present day. Andrew lives in constant fear of local law enforcement due to this longstanding pattern and practice of malicious criminal prosecutions directed at him. Andrew is unable to have peaceful and quiet enjoyment of his homestead and land in Unicoi County due to the malicious prosecutions and abusive law enforcement practices alleged herein.

**D.     Local Law Enforcement Decide to Retaliate Against Jerry Puckett on Account of His Advocacy for Andrew.**

43.     Plaintiff Jerry Puckett is well-known to each Defendant as being the legally appointed custodian of Andrew's legal, medical and financial affairs. Jerry has frequently accompanied Andrew to court hearings as Andrew defended against a litany of false and malicious criminal charges. On several occasions, Jerry has stood up and advocated for Andrew in open court in instances where Andrew was forced to appear in court without the assistance of legal counsel. Prosecutors from the First Judicial District Attorney's office frequently interacted with Jerry directly in connection with Andrew's criminal prosecutions, including presenting plea bargain deals to Andrew through Jerry. It long has been well-known to First District prosecutors that Jerry must consent to Andrew's acceptance of any plea bargain agreement, and that Jerry frequently has counseled Andrew to not plead guilty to frivolous criminal charges for which Andrew is not guilty. Unicoi County Sheriff Department employees (specifically including Defendants Hensley and Rogers) have interacted with Jerry in connection with interrogating Andrew and investigating

Andrew for a variety of false criminal charges. Erwin Police Department employees (specifically including Defendant Buchanan) have interacted with Jerry in connection with interrogating Andrew and investigating Andrew for a variety of false criminal charges.

44.     As a result of Jerry's advocacy and assistance to Andrew in connection with assisting Andrew defend against the false criminal charges, each Defendant (acting separately and also as part of their conspiracy) viewed Jerry as interfering with their scheme to run Andrew out of Unicoi County and each Defendant developed a specific animus towards Jerry on account of his assistance to and advocacy for Andrew. As a result, the Defendants (acting separately and also as part of their conspiracy) decided to extend their malicious prosecution scheme and conspiracy to include malicious criminal prosecution of cases against Jerry. In essence, local law enforcement decided that if they could not run Andrew out of Unicoi County by pressuring him with criminal prosecutions, then they would accomplish their goal by also harassing Andrew's caretaker Jerry with malicious prosecutions also.

45.     In or about September 2020, Plaintiff Jerry Puckett was arrested and charged with Aggravated Assault. The charges originated from an incident in which Jerry himself had been the victim of a serious and potentially deadly crime.

        a.      Jerry, accompanied by his dog, had travelled a short distance up the mountain from his home to hike on public land in the Cherokee National Forest. Jerry parked his truck in a designated public parking area and proceeded with his dog to the trailhead entrance to the public land. As he did so, the homeowner of an adjacent residential property, Claude Hensley, came out of his house with a 9mm handgun and started yelling at Jerry to get off his property. When Claude Hensley pointed his gun directly at Jerry, Jerry started running in the opposite direction back to his truck. Claude Hensley followed Jerry and continued to point his gun at Jerry.

Jerry and the dog quickly jumped into Jerry's truck and began to drive away. As they did so, Claude Hensley fired his gun several times at Jerry's vehicle. Claude Hensley put multiple bullet holes in the back window of Jerry's truck, and one bullet hit Jerry's dog directly in the chest while the dog sat right next to Jerry in the cab of the truck. Luckily, the dog survived from Claude Hensley's gunshot wounds; and Jerry was not physically injured in the assault. During the entirety of this encounter, Jerry never fired a gun at all; and Jerry never threatened to use force or lethal force in any manner against Claude Hensley.

b.      On information and belief, Claude Hensley is a blood relative of Defendant Hensley. On information and belief, Claude Hensley and Defendant Hensley grew up together in Unicoi County and have been life-long friends and hunting buddies.

c.      On information and belief, Defendant Hensley and Defendant Rogers each caused and encouraged Claude Hensley to make false statements about the incident and about Jerry for purposes of bringing false and malicious charges against Jerry. On information and belief, Defendant Hensley and Defendant Rogers conducted a sham investigation of the incident for the purpose of manufacturing false charges against Jerry.

d.      Based on Unicoi County's investigation, Jerry Puckett was subsequently charged with Aggravated Assault. This charge was brought against Jerry even though Jerry was the victim in this incident. This charge was brought against Jerry even though Jerry never made any threat against Claude Hensley and never took any aggressive action toward the man. The Aggravated Assault charge was brought against Jerry even though Claude Hensley shot at Jerry and Jerry's dog while they were driving away from the scene. Jerry was arrested and charged with Aggravated Assault without probable cause.

e.      This Aggravated Assault charge against Jerry was brought in Unicoi

County General Sessions Criminal Court. On or about September 8, 2022, the charge was dismissed by the First Judicial District Attorney's Office due to lack of supporting evidence. For reasons unknown, this criminal charge for Aggravated Assault against Jerry Puckett is not currently reflected in the official criminal records of the State of Tennessee. The Unicoi County General Sessions case is *State of Tennessee v. Jerry Puckett*, Docket Number 86GS1-2019-CR-81462.

**E.    Local Law Enforcement Conspirators Extend Their Scheme to Include Malicious Prosecution of George Robet Puckett, Jerry's son and Andrew's nephew.**

46.    Unsatisfied that the malicious charges against Jerry had failed to run the Puckett family out of Unicoi County, participants in the conspiracy next decided to extend their malicious prosecution scheme to include the filing of false criminal charges against Jerry's son (George Robert Puckett, who at the time was a minor child), arresting George, and detaining him in a juvenile detention facility without probable cause and in violation of Tennessee law.

47.    When Jerry Puckett went to court on September 8, 2022, for a hearing on the Aggravated Assault charge against him, he was accompanied by his son George Puckett, who sat in the courtroom gallery throughout the hearing. Defendant Rogers also was also in the courtroom for the hearing. Judge R. Mitchel Manuel presided over criminal matters in General Sessions Court that day after having been recently elected to the bench in Unicoi Conty. Prosecutors from the First District Attorney's Office moved to dismiss the Aggravated Assault charge against Jerry because of lack of evidence, and the charge was dismissed that day.

48.    Moments later, Defendant Rogers reacted by arresting and handcuffing George Puckett on the spot, right there in the courtroom. Rogers' decision to arrest George was done out of malice and spite directed at the Puckett family that originated with Rogers' distaste for Andrew and Andrew's display of symptoms of mental illness.  Defendant Rogers kept George in handcuffs

for many minutes until Defendant Hensley arrived. Eventually Jerry was told by multiple law enforcement officers that he needed to leave the courthouse building and walk away from his son George. Jerry asked for some paperwork to explain what was happening. He demanded a "receipt" for them to take away his child. Jerry was given nothing. Jerry was told by multiple law enforcement officers that *if he did not leave the building he would be arrested*. Under threat of arrest, Jerry left the building and walked away from his son with no paperwork in hand.

49.     Unbeknownst to Jerry, Defendant Rogers had filled out a sworn Juvenile Delinquent Petition against George. Judge Manuel had signed an Order of Detention at some point later that day, on September 8, 2022. George and Jerry were not provided with these documents at George's court hearing the following day. Jerry received no paperwork at all to explain what had happened to his son until approximately *one month later*.

50.     The factual events that served as the basis for Rogers' sworn Juvenile Delinquent Petition against George Puckett had transpired on or about August 19, 2022—weeks before Rogers presented his Juvenile Petition and obtained the Order of Detention on September 8, 2022. Rogers had taken no investigatory or other actions with respect to these events during the intervening time. But, immediately upon seeing that Jerry's Aggravated Assault charge would be dismissed, Rogers immediately sprung to action. The timing of his actions demonstrate clearly that he was motivated by an improper purpose—to continue harassing and intimidating the Puckett family by maliciously arresting and charging them with false crimes. Rogers sworn Petition against George contained statements Rogers knew to be false, and he made the false statements for the purpose of justifying his decision to unlawfully detain George, who was a minor child at that time.

51.     George Puckett committed no crime on or about August 19, 2022, and he certainly did nothing to justify arrest and detention of a juvenile under the requirements of Tennessee law.

a.     On that day, George had borrowed a four-wheel all-terrain vehicle ("ATV") from a friend and was driving it on a public road. George lost control of the ATV and it slid off the side of the road. The ATV hit a fence adjacent to the roadway and caused minor damage to the fence, with an estimated fence repair cost of no more than $50. George took a hard bump to the head during the incident and sustained a serious head injury and/or concussion.

b.     Within minutes, George was able to locate the property owner, who George informed of the accident and the damage to the fence. George then began to walk along the roadway toward a known neighbor's house to ask for assistance.

c.     Soon after, Defendant Sheriff Hensley arrived on the scene. Hensley was driving his personal, unmarked vehicle and Hensley was dressed in civilian clothes, not in his police uniform. As Hensley exited his truck, his first words to George were "I know you. You're Andrew's kin. Come over here. I'm going to search you."

d.     George, not knowing the intentions of this strange man, immediately turned and ran into the woods, where George hid for a number of hours and was never apprehended.

e.     As George hid in the woods, he heard Hensley approach the door of the closest house and yell at the resident from a distance that a "dangerous criminal fugitive" was hiding in the woods and that the resident should lock her doors and take precautions for her safety.

52.     Based on these factual events, Defendant Rogers' September 8, 2022 Juvenile Delinquent Petition charged George Puckett with "Leaving the Scene of an Accident" and "Failure to Stop, Halt, Frisk." Judge Manuel's Order For Detention also charged George with "Leaving the Scene of an Accident (With Property Damage)" and "Failure to Stop, Halt, Frisk." George was charged, arrested, and detained on these criminal charges without probable cause, in violation of his due process rights, and in violation of Tennessee juvenile law.

53.     In response to these frivolous criminal charges, George filed a Motion to Dismiss the Juvenile Delinquent Petition. George's motion pointed out that the Juvenile Petition did not cite any specific criminal statutes, in violation of TN Code §37-1-120. Further, the Motion to Dismiss pointed out that no Tennessee criminal statute is entitled "Leaving the Scene of an Accident," nor is any Tennessee criminal statute entitled "Failure to Stop, Halt, Frisk."

54.     Because the Juvenile Delinquent Petition against George Puckett was fundamentally defective, First Judicial District Assistant DA Kelly Lowe asked for (and was given) permission by the court to file an Amended Juvenile Delinquent Petition against George. The prosecutor's need for an amendment shows conclusively that George was originally arrested and detained on invalid charges and without probable cause based on legally deficient charging papers.

55.     In the amended petition, the charges against George Puckett were amended to be: (1) "resisting 'stop' halt frisk" under Tenn. Code §39-16-602, (2) "failure to make immediate notice of accident with property damage" under Tenn. Code §55-10-106, and (3) "unlawful operation of off road vehicle on highway and "Resisting Stop, Frisk, Halt, Arrest or Search" under TN Code §39-16-602. George was charged with each of these crimes without probable cause. The amended petition again contained materially false factual statements supplied by Defendant Rogers in support of these false criminal charges.

56.     On or about March 13, 2023, Judge R. Mitchell Manuel—sitting now as a juvenile court judge— began a bench trial on the charges against George Puckett as stated in the Amended Juvenile Delinquent Petition. The hearing was continued and concluded on April 10, 2023.

        a.      The evidence at trial showed conclusively that George Puckett did not commit the offense of Resisting a Stop, Frisk, Halt. One essential element of the crime is

preventing or obstructing a law enforcement officer "by using force against the law enforcement officer or another." See Tenn. Code. §39-16-602(a). Under Tennessee law, it is not a crime to merely run away from a police officer who is not attempting to make an arrest, but is merely attempting to perform an investigative stop, a safety frisk, or issuing a halt order, etc.[1] Defendant Rogers' sworn testimony in both the original and amended Juvenile Delinquent Petitions against George stated that George *ran and fled* from Sheriff Hensley, with no suggestion of physical contact or force. Multiple direct eyewitnesses testified at trial that George fled with no use of physical force against Sheriff Hensley. This evidence conclusively proved that George had not committed the charged crime.

b.      The evidence at trial showed conclusively that George did not commit an offense under Tenn. Code §55-10-106. By its express language, the statute does not apply where the only damage or injury is to *property that is adjacent* to a highway. *See* Tenn. Code §55-10-106(b). Instead, the applicable statute is Tenn. Code §55-10-105(a), which specifies the duties for a driver involved in an accident that causes injury only to a fence or other property adjacent to the highway. Under that statute, it is the driver's obligation to take reasonable steps to notify the property owner, *not the police*. The evidence at trial conclusively showed that George found and notified the owner of the fence within minutes after the accident. *The property owner himself testified to this at the trial*. The evidence conclusively established that George fulfilled his duties under §55-10-105(a), and that he did not commit the charged crime under §55-10-106 because that

---

[1] When a law enforcement officer is attempting to make an arrest, pursuant to a warrant or otherwise supported by probable cause of a crime, it is a crime for the person to merely run away. Use of physical force is not a required element of evading *arrest*. *See* Tenn. Code §39-16-603. When the officer is attempting to perform an investigative stop for interrogation, to frisk a person for safety reasons, to issue a halt order, etc. then it is not a crime merely to run away and flee the officer if this can be done without using physical force against the officer. *See* Tenn. Code. §39-16-602(a).

statute did not apply to him at all under the circumstances.

c.      The charge under §55-8-185 is a motor vehicle violation. Under Tennessee law, a moving vehicle violation alone can never be the basis for a juvenile arrest or detention. This new charge in the amended Petition was a *post hoc* rationalization for previous charges Defendants brought against George Puckett in bad faith. The owner of the damaged fence testified at George's trial that people ride four-wheel ATV vehicles up and down that roadway all the time, and that doing such a thing was a very normal and not unexpected thing to do on that particular stretch of road. Defendant Rogers did not even think to bring this charge in the original Petition. It was charged against George in this trial only as an attempt to gloss over or justify Defendants' previous bad decision to arrest and detain George in the manner they did.

d.      Defendant Rogers testified under oath in this trial that it is the policy of his Unicoi County Sheriff's Department to arrest and detain any juvenile who runs from the police. According to Roger's testimony, if a juvenile runs from the police in Unicoi county, the police will find a reason to arrest and detain the juvenile at the Johnson City juvenile detention center for at least some period of time.

57.      Against the overwhelming evidence presented at George's trial, Judge Manuel found at the conclusion of the April 10, 2023 trial that George was guilt of all three criminal charges. Judge Manuel scheduled a sentencing hearing to occur about a month later.

58.      Prior to the sentencing hearing, George Puckett (with the assistance of Jerry, his father) filed an appeal of George's case to the Criminal Court to ensure that George's appellate rights were preserved. In the intervening months, George has not been given appeal. The juvenile prosecutor from the case has essentially abandoned prosecution of George in light of the appeal. The juvenile prosecutor's abandonment of the case amounts to a favorable termination of the

proceeding in favor of George Puckett.

**F.     Judge Manuel Joins the Conspiracy and Maliciously Prosecutes Jerry Puckett for a Frivolous Contempt Charge in Further Retaliation Against the Puckett Family**

59.     On or about May 10, 2023, George Puckett appeared again before Judge Manuel for purposes of sentencing. During this hearing, Judge Manuel openly conspired with the juvenile prosecutor (Kelly Lowe, from the First Judicial District Attorney's Office) in an attempt to strong-arm and coerce George into taking a plea deal that would "make this whole case go away." Judge Manuel told George that if he would merely withdraw his appeal and agree to a plea bargain, Judge Manuel would make the whole case disappear in 90 days, as if the whole thing had never happened. Judge Manuel told George that he would not even have to come back to court. The whole case would automatically be expunged. Judge Manuel threatened severe consequences if George did not accept the deal, and he told George that his father Jerry was not making the best decisions for George. Throughout, George (and Jerry and his behalf) insisted that George was innocent, that he would not plead guilty, and they intended to take an appeal of the trial to General Sessions Court.

60.     Judge Manuel proceeded to sentence George to a judicial diversion program, with a sentence of 90 days on juvenile probation and 25 hours of community service. Judge Manuel ordered Jerry to take George down the hall to the probation office and immediately sign George up for probation services, even though George had already filed an appeal.

61.     Jerry and George went to see the probation officer, but came to a disagreement when the probation officer wanted Jerry to sign an authorization for release of information that was unlimited in scope and that did not have the blanks from the form filled in. Jerry and George ended up leaving the courthouse without signing George up for probation services.

62.     Jerry continued to prepare for George's appeal to the Criminal Court. Jerry requested the audio recordings and/or written transcripts of George's trial from the juvenile justice

department and was told that these would be sent to Jerry in the mail. When Jerry did not receive the materials in the mail, he began calling the court clerk. On or about June 8, 2023, Jerry told someone in the court clerk's office that he would be coming to the courthouse to pick up the requested audio recordings and transcripts.

63.     When Jerry went to the courthouse to pick up the requested records on June 8, 2023, he was in for a surprise. Jerry was arrested by a Unicoi County Deputy Sheriff, booked and processed, and taken before Judge Manuel later that afternoon. Unbeknownst to Jerry, Judge Manuel himself had issued a bench warrant for Jerry's "Failure to Appear" even though Jerry had never missed any court appointment. When Jerry was taken before Judge Manuel, the Judge *sua sponte* changed the charge. Judge Manuel convicted Jerry on the spot for "Contempt of Court" for alleged contempt that had occurred at George Puckett's sentencing hearing on May 10, 2023. Judge Manuel's stated basis for the contempt charge was Jerry's failure to sign George up for probation services on May 10, 2023. Judge Manuel sentenced Jerry to ten days incarceration, and Jerry was immediately taken to jail. Jerry was never provided a lawyer during this process. Judge Manuel himself issued the bench warrant, Judge Manuel himself changed the charge to contempt of court, Judge Manuel was the only witness for the prosecution, he served as prosecutor, and he served as judge. It was an exercise of pure abuse of power.

64.     Jerry served the entire 10 days of his sentence for contempt of court. After he had been imprisoned for about 3 days, Jerry (through counsel) filed a Motion for Reconsideration presenting the legal reasons that Judge Manuel's actions were improper and illegal. Judge Manuel never considered the motion, never held a hearing, and never made a ruling. Instead, he simply let Jerry sit in jail for 10 days.

65.     Judge Manuel's actions are highly illegal and an abuse of his authority. The alleged

contempt of court did not happen in Judge Manuel's courtroom. It did not happen in his presence. He did not himself witness the alleged contempt. In such circumstance, Judge Manuel did not have legal authority to exercise his summary contempt powers. Judge Manuel issued a bench warrant for "failure to appear" without probable cause, leading to Jerry's arrest. Judge Manuel's charge and conviction of Jerry for "contempt of court" was done without probable cause and in violation of Jerry's due process rights. Judge Manuel's actions amount to malicious prosecution, violation of Jerry's federal civil rights, and other violations of Tennessee and federal law.

66.     To this day, Jerry has never received the audio recordings of George's trial or the other information responsive to his public information request. Judge Manuel's actions to persuade George to accept a plea deal to "make the case go away" and Judge Manuel's illegal and punitive actions against Jerry are part of Judge Manuel's attempts to cover up the wrongdoing by local law enforcement that was revealed by the testimony at George's trial. On information and belief, Judge Manuel has taken (or has caused to be taken) other affirmative steps to deny George Puckett his appellate rights, to conceal the audio recordings and transcripts of George's trial, and to otherwise conceal the wrongful conduct of the Defendants in this case as well as his own wrongful conduct.

67.     Judge Manuel's actions show that, at least by the date of George's sentencing hearing (if not before) Judge Manuel had joined the conspiracy to use malicious prosecution as a tool to run the Puckett family out of Unicoi County. Even though Judge Manuel is not joined in this lawsuit due to his judicial immunity, his involvement in the conspiracy against the Puckett family makes other participants in the conspiracy, including each Defendant, legally responsible for the damages caused by Judge Manuel's unlawful and illegal conduct.

# IV. ASSERTED CAUSES OF ACTION

**A.   Claim No. 1: Plaintiff Andrew Puckett against Defendant Unicoi County and Defendant City of Erwin for Violation of Title II of the Americans with Disabilities Act (Illegal Discrimination)**

68.     Plaintiff Andrew Puckett asserts this cause of action against Defendant Unicoi County and Defendant City of Erwin for violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12132 and related enabling regulation 28 C.F.R. §35.130(a).

69.     Defendant Unicoi County and Defendant City of Erwin each are public entities that are subject to the requirements of 42 U.S.C. §12132 and 28 C.F.R. §35.130. *See* 42 U.S.C. §12131(1).

70.     Plaintiff Andrew Puckett is disabled because his mental impairment substantially limits one or more major life activities. *See* 42 U.S.C. §12102(1). Andrew has qualified as disabled for purposes of Social Security Disability insurance for many years. Andrew Puckett, on account of his diagnosed mental health conditions and illnesses, is a qualified individual with a disability for purposes of Title II of the Americans with Disabilities Act. *See* 42 U.S.C. §12131(2).

71.     Defendant Unicoi County and Defendant City of Erwin each provide local law enforcement services within their jurisdictional boundaries. Defendant Unicoi County and Defendant City of Erwin each have subjected (and each continue to subject) Plaintiff Andrew Puckett to discrimination in their respective provision of law enforcement services by subjecting Andrew to an extensive pattern and practice of malicious prosecutions and abusive law enforcement practices, as alleged herein.

72.     The discrimination against Andrew Puckett by each Defendant (Unicoi County and City of Erwin) was and is motivated by an intent to discriminate against Andrew by reason of his disability. As alleged herein, the relevant actors on behalf of each of these Defendants decided to

perpetuate a scheme of malicious prosecutions against Andrew specifically because they did not want a person with visible indications of mental disability to live in Unicoi County. Defendants' pattern and practice of malicious prosecutions against Andrew were motivated by a specific intent to discriminate against him on the basis of his mental disabilities.

73.     Each Defendant's discrimination against Andrew on the basis of his disabilities, in violation of 42 U.S.C. §12132, has caused Andrew significant damages, as alleged more specifically below.

**B.     Claim No. 2: Plaintiff Jerry Puckett and Plaintiff George Puckett against All Defendants for Violation of Title II of the Americans with Disabilities Act (Retaliation)**

74.     Plaintiff Jerry Puckett and Plaintiff George Puckett each assert this claim for ADA Retaliation in violation of 42 U.S.C. §12203(a) and 28 C.F.R. §35.134(a) against all Defendants named in this complaint.

75.     Defendant Unicoi County and Defendant City of Erwin each are public entities that are subject to the requirements of 42 U.S.C. §12203(a) and 28 C.F.R. §35.134(a). *See* 42 U.S.C. §12131(1). Each of the individual Defendants (Defendants Hensley, Rogers, and Buchanan) also are subject to the requirements of 42 U.S.C. §12203(a) and 28 C.F.R. §35.134(a). This statute and this regulation specify that "no person" shall engage in the prohibited acts of retaliation. *See Datto v. Harrison*, 664 F.Supp.2d 472, 489-49 (E.D. Pa. 2009).

76.     Plaintiff Jerry Puckett has engaged in (and continues to engage in) statutorily protected activity and expression under 42 U.S.C. §12203(a). Jerry is Andrew Puckett's legally appointed custodian, with duties and responsibilities for management of Andrew's legal affairs. As alleged herein, Jerry has regularly assisted Andrew in opposing the discriminatory pattern and practice of malicious prosecution cases aimed at Andrew. Jerry regularly testified, assisted, and

participated in investigations and court proceedings related to these discriminatory malicious prosecutions brought against Andrew. Jerry has actively assisted Andrew in opposing Defendants' conspiracy and scheme to run Andrew out of Unicoi County because of Andrew's mental health disabilities.

77. Defendants (each acting alone and also as part of their conspiracy) have subjected Jerry to adverse actions and consequences on account of Jerry's statutorily protected activity. Jerry's assistance and advocacy for Andrew has been well-known to each Defendant. Defendants each (and collectively as part of their conspiracy) developed a specific discriminatory animus toward Jerry on account of his statutorily protected activity on behalf of Andrew. Defendants (each separately and also collectively in conspiracy) made or caused adverse actions to be taken against Jerry specifically because of Jerry's statutorily protected activity. The adverse actions taken in retaliation against Jerry include, at least: (1) malicious prosecution of Jerry for Aggravated Assault, as previously alleged, (2) malicious prosecution of Jerry for Contempt of Court, as previously alleged, and (3) arrest, detention, and prosecution of George Puckett for juvenile delinquency, as previously alleged.

78. Plaintiff George Puckett has engaged in (and continues to engage in) statutorily protected activity and expression under 42 U.S.C. §12203(a). George Puckett is Andrew Puckett's nephew and secondary caretaker. George also regularly assists Andrew in opposing the discriminatory pattern and practice of malicious prosecution cases aimed at Andrew, including assisting Andrew deal with investigations and court proceedings related to these discriminatory malicious prosecutions brought against Andrew.

79. Defendants (each acting alone and also as part of their conspiracy) have subjected George Puckett to adverse actions and consequences on account of George's statutorily protected

activity. George's assistance and advocacy for Andrew has been well-known to each Defendant. Defendants each (and collectively as part of their conspiracy) developed a specific discriminatory animus toward George on account of his statutorily protected activity on behalf of Andrew. Defendants (each separately and also collectively in conspiracy) made or caused adverse actions to be taken against George specifically because of George's statutorily protected activity. The adverse actions taken in retaliation against George include, at least: arrest, detention, and prosecution of George for juvenile delinquency, as previously alleged.

80. As a result of each Defendant's illegal acts of retaliation in violation of 42 U.S.C. §12203(a), Plaintiff Jerry Puckett and Plaintiff George Puckett each have suffered damages proximately caused by these acts of retaliation, as alleged more specifically below.

**C. Claim No. 3: Plaintiff Andrew Puckett, Plaintiff Jerry Puckett, and Plaintiff George Puckett Against All Defendants for Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. §1985**

81. Plaintiff Andrew Puckett, Plaintiff Jerry Puckett, and Plaintiff George Puckett each file this claim for conspiracy to interfere with civil rights in violation of 42 U.S.C. §1985 against all Defendants.

82. As alleged herein, each of Defendant Unicoi County, Defendant City of Erwin, Defendant Hensley, Defendant Rogers and Defendant Buchanan engaged in a conspiracy directed against each Plaintiff to use malicious prosecutions against Plaintiffs and other abusive law enforcement practices directed against Plaintiffs in a concerted effort to discriminate against each of them, violate their civil rights, and ultimately to run each of them out of Unicoi County from fear of malicious criminal prosecutions. The conspiracy also included others not named as a defendant in this complaint, including employees of the First Judicial District Attorney's Office (including but not limited to Ryan Curtis, Todd Hull and Kelly Lowe) and Judge Robert Mitchel

Manuel. On information and belief, the conspiracy included other John Doe and/or Jane Doe individuals who were employed by Unicoi County or the City of Erwin and whose identities presently are unknown to Plaintiffs.

83. As previously alleged, Defendants committed many overt acts in furtherance of this conspiracy. The overt acts include, at least: the pattern and practice of malicious prosecutions brought against Andrew Puckett; the arrest and detention of Andrew Puckett on charges of a Hoax Bomb; the arrest and charge of Jerry Puckett on charges of Aggravated Assault; the arrest, detention, and charge of George Puckett for juvenile delinquent offenses; the charge against Jerry Puckett for "failure to appear"; and the charge, arrest, and detention of Jerry Puckett on a malicious and illegal charge for "contempt of court."

84. Defendants engaged in the alleged conspiracy for the express purpose of discriminating against Andrew Puckett on the basis of his mental health disabilities, for the purpose of retaliating against Jerry Puckett and George Puckett for their statutorily protected advocacy and assistance to Andrew, and for the purpose of denying each Plaintiff the equal protection of the laws, and to infringe each Plaintiff's constitutional and civil rights.

85. As a result of the alleged conspiracy in violation of 42 U.S.C. §1985, each Plaintiff has suffered significant damages, as alleged more specifically below.

**D.     Claim No. 4: Plaintiff Andrew Puckett against All Defendants for Deprivation of Civil Rights Under 42 U.S.C. §1983**

86. Plaintiff Andrew Puckett is a natural born U.S. citizen who is entitled to all civil rights, privileges and immunities of U.S. citizenship as protected by the United States constitution and federal law. Andrew brings this cause of action for violation of 42 U.S.C. §1983 against all Defendants.

87. Defendants (each acting alone, and also Defendants acting together in conspiracy)

violated Andrew's federal constitutional rights in at least the following ways:

      a.    By maliciously prosecuting Andrew for a frivolous charge of Hoax Bomb, as previously alleged, Defendants violated Andrew's right to be free of malicious criminal prosecutions as protected by the Fourth Amendment (illegal seizure of his person), the Fifth Amendment (denial of liberty and property without due process), and Fourteenth Amendment (outrageous conduct);

      b.    By maliciously prosecuting Andrew with frivolous criminal charges, in a scheme that Defendants perpetuate to this day, and by trying to run Andrew out of Unicoi County, Defendants violated Andrew's rights as a property owner in Unicoi County to be entitled to the quiet enjoyment of his home and property, in violation of the Fifth and Fourteenth Amendments (denial of property without due process); and

      c.    By failing to provide Andrew with needed medical care during his interrogation and detention on the charge for a Hoax Bomb, Defendants deprived Andrew of his rights under the Fourth and Fourteenth Amendments.

88.    At all relevant times, Defendant Hensley was acting under color of law. Defendant Hensley undertook all actions relevant to this cause of action in his capacity as Sheriff of Unicoi County. Defendant Hensley is not entitled to qualified immunity because his actions were in violation of clearly established law.

89.    At all relevant times, Defendant Rogers was acting under color of law. Defendant Rogers undertook all actions relevant to this cause of action in his capacity as Chief Deputy Sheriff of Unicoi County. Defendant Rogers is not entitled to qualified immunity because his actions were in violation of clearly established law.

90.    At all relevant times, Defendant Buchanan was acting under color of law.

Defendant Buchanan undertook all actions relevant to this cause of action in his capacity as Captain of the Erwin Police Department. Defendant Buchanan is not entitled to qualified immunity because his actions were in violation of clearly established law.

91.     Defendant City of Erwin is responsible for the constitutional violations alleged in this cause of action. Defendant City of Erwin adopted malicious prosecution against Andrew Puckett as an official policy of the City of Erwin. The City of Erwin adopted an official custom of malicious prosecution against Andrew Puckett as demonstrated by the extensive pattern and practice of malicious prosecutions brought against him. These official policies and customs of malicious prosecution of Andrew have long been well-known to relevant policymakers for the City of Erwin. Defendant City of Erwin has acted with deliberate indifference to violation of Andrew's constitutional rights. Defendant City of Erwin's official policy and official custom of malicious prosecution of Andrew Puckett was a direct cause and a moving force cause of the violation of Andrew's constitutional rights, as alleged herein.

92.     Defendant Unicoi County is responsible for the constitutional violations alleged in this cause of action. Defendant Unicoi County adopted malicious prosecution against Andrew Puckett as an official policy of Unicoi County. Unicoi County adopted an official custom of malicious prosecution against Andrew Puckett as demonstrated by the extensive pattern and practice of malicious prosecutions brought against him. These official policies and customs of malicious prosecution of Andrew have long been well-known to relevant policymakers for Unicoi County. Defendant Unicoi County has acted with deliberate indifference to violation of Andrew's constitutional rights. Defendant Unicoi County's official policy and official custom of malicious prosecution of Andrew Puckett was a direct cause and a moving force cause of the violation of Andrew's constitutional rights, as alleged herein.

93. As a result of Defendants' violation of his constitutional rights, Andrew has suffered significant damages, as alleged in more detail below.

**E. Claim No. 5: Plaintiff Jerry Puckett against All Defendants for Deprivation of Civil Rights Under 42 U.S.C. §1983**

94. Plaintiff Jerry Puckett is a natural born U.S. citizen who is entitled to all civil rights, privileges and immunities of U.S. citizenship as protected by the United States constitution and federal law. Jerry brings this cause of action for violation of 42 U.S.C. §1983 against all Defendants.

95. Defendants (each acting alone, and also Defendants acting together in conspiracy) violated Jerry's federal constitutional rights in at least the following ways:

a. By maliciously prosecuting Jerry for a frivolous charge of Aggravated Assault, as previously alleged, Defendants violated Jerry's right to be free of malicious criminal prosecutions as protected by the Fourth Amendment (illegal seizure of his person), the Fifth Amendment (denial of liberty and property without due process), and Fourteenth Amendment (outrageous conduct);

b. By maliciously charging and arresting Jerry for a frivolous charge of "Failure to Appear" by Judge Manuel, as previously alleged, Defendants (through their conspiracy) violated Jerry's right to be free of malicious criminal prosecutions as protected by the Fourth Amendment (illegal seizure of his person), the Fifth Amendment (denial of liberty and property without due process), and Fourteenth Amendment (outrageous conduct);

c. By maliciously charging and arresting Jerry for a frivolous charge of "Contempt of Court" by Judge Manuel, and incarcerating Jerry for ten days on this frivolous charge, as previously alleged, Defendants (through their conspiracy) violated Jerry's right to be free of malicious criminal prosecutions as protected by the Fourth Amendment (illegal seizure of

his person), the Fifth Amendment (denial of liberty and property without due process), and Fourteenth Amendment (outrageous conduct);

d. By maliciously charging George Puckett with frivolous juvenile delinquency charges, by illegally arresting and detaining George Puckett, and by taking the other alleged actions with respect to George Puckett at times when George Puckett was a minor child, Defendants interfered with Jerry's protected parental rights in violation of the Fourth, Fifth and Fourteenth Amendments; and

e. By maliciously prosecuting Jerry with frivolous criminal charges, in a scheme that Defendants perpetuate to this day, and by trying to run Jerry and his family out of Unicoi County, Defendants violated Jerry's rights as a property owner in Unicoi County to be entitled to the quiet enjoyment of his home and property, in violation of the Fifth and Fourteenth Amendments (denial of property without due process).

96. At all relevant times, Defendant Hensley was acting under color of law. Defendant Hensley undertook all actions relevant to this cause of action in his capacity as Sheriff of Unicoi County. Defendant Hensley is not entitled to qualified immunity because his actions were in violation of clearly established law.

97. At all relevant times, Defendant Rogers was acting under color of law. Defendant Rogers undertook all actions relevant to this cause of action in his capacity as Chief Deputy Sheriff of Unicoi County. Defendant Rogers is not entitled to qualified immunity because his actions were in violation of clearly established law.

98. At all relevant times, Defendant Buchanan was acting under color of law. Defendant Buchanan undertook all actions relevant to this cause of action in his capacity as Captain of the Erwin Police Department. Defendant Buchanan is not entitled to qualified immunity

because his actions were in violation of clearly established law.

99.     Defendant City of Erwin is responsible for the constitutional violations alleged in this cause of action. Defendant City of Erwin adopted malicious prosecution against the Puckett Family as an official policy of the City of Erwin. The City of Erwin adopted an official custom of malicious prosecution as demonstrated by the extensive pattern and practice of malicious prosecutions brought against the Puckett family. These official policies and customs of malicious prosecution against the Pucketts have long been well-known to relevant policymakers for the City of Erwin. Defendant City of Erwin has acted with deliberate indifference to violation of Jerry's constitutional rights. Defendant City of Erwin's official policy and official custom of malicious prosecution of the Puckett family was a direct cause and a moving force cause of the violation of Jerry's constitutional rights, as alleged herein.

100.    Defendant Unicoi County is responsible for the constitutional violations alleged in this cause of action. Defendant Unicoi County adopted malicious prosecution against the Puckett family as an official policy of Unicoi County. Unicoi County adopted an official custom of malicious prosecution against the Puckett family as demonstrated by the extensive pattern and practice of malicious prosecutions brought against them. These official policies and customs of malicious prosecution of the Puckett family have long been well-known to relevant policymakers for Unicoi County. Defendant Unicoi County has acted with deliberate indifference to violation of Jerry's constitutional rights. Defendant Unicoi County's official policy and official custom of malicious prosecution of the Puckett family was a direct cause and a moving force cause of the violation of Jerry's constitutional rights, as alleged herein.

101.    As a result of Defendants' violation of his constitutional rights, Jerry has suffered significant damages, as alleged in more detail below.

**F.      Claim No. 6: Plaintiff George Puckett against All Defendants for Deprivation of Civil Rights Under 42 U.S.C. §1983**

102.    Plaintiff George Puckett, a minor child at the time this lawsuit was filed and who now is a legal adult, is a natural born U.S. citizen who is entitled to all civil rights, privileges and immunities of U.S. citizenship as protected by the United States constitution and federal law. George Puckett brings this cause of action for violation of 42 U.S.C. §1983 against all Defendants.

103.    Defendants (each acting alone, and also Defendants acting together in conspiracy) violated George Puckett's federal constitutional rights in at least the following ways:

a.      By maliciously arresting, detaining, and prosecuting George for frivolous juvenile delinquency charges, as previously alleged, Defendants violated George's right to be free of malicious criminal prosecutions as protected by the Fourth Amendment (illegal seizure of his person), the Fifth Amendment (denial of liberty and property without due process), and Fourteenth Amendment (outrageous conduct); and

b.      By maliciously prosecuting George with frivolous criminal charges, in a scheme that Defendants perpetuate to this day, and by trying to run George and his family out of Unicoi County, Defendants violated George's rights as a resident and invitee of a property owner in Unicoi County to be entitled to the quiet enjoyment of the home and property where George lives, in violation of the Fifth and Fourteenth Amendments (denial of property without due process).

104.    At all relevant times, Defendant Hensley was acting under color of law. Defendant Hensley undertook all actions relevant to this cause of action in his capacity as Sheriff of Unicoi County. Defendant Hensley is not entitled to qualified immunity because his actions were in violation of clearly established law.

105.    At all relevant times, Defendant Rogers was acting under color of law. Defendant

Rogers undertook all actions relevant to this cause of action in his capacity as Chief Deputy Sheriff of Unicoi County. Defendant Rogers is not entitled to qualified immunity because his actions were in violation of clearly established law.

106.    At all relevant times, Defendant Buchanan was acting under color of law. Defendant Buchanan undertook all actions relevant to this cause of action in his capacity as Captain of the Erwin Police Department. Defendant Buchanan is not entitled to qualified immunity because his actions were in violation of clearly established law.

107.    Defendant City of Erwin is responsible for the constitutional violations alleged in this cause of action. Defendant City of Erwin adopted malicious prosecution against the Puckett Family as an official policy of the City of Erwin. The City of Erwin adopted an official custom of malicious prosecution as demonstrated by the extensive pattern and practice of malicious prosecutions brought against the Puckett family. These official policies and customs of malicious prosecution against the Puckett family have long been well-known to relevant policymakers for the City of Erwin. Defendant City of Erwin has acted with deliberate indifference to violation of Jerry's constitutional rights. Defendant City of Erwin's official policy and official custom of malicious prosecution of the Puckett family was a direct cause and a moving force cause of the violation of George's constitutional rights, as alleged herein.

108.    Defendant Unicoi County is responsible for the constitutional violations alleged in this cause of action. Defendant Unicoi County adopted malicious prosecution against the Puckett family as an official policy of Unicoi County. Unicoi County adopted an official custom of malicious prosecution against the Puckett family as demonstrated by the extensive pattern and practice of malicious prosecutions brought against them. These official policies and customs of malicious prosecution of the Puckett family have long been well-known to relevant policymakers

for Unicoi County. Defendant Unicoi County has acted with deliberate indifference to violation of George's constitutional rights. Defendant Unicoi County's official policy and official custom of malicious prosecution of the Puckett family was a direct cause and a moving force cause of the violation of George's constitutional rights, as alleged herein.

109.    As a result of Defendants' violation of his constitutional rights, Plaintiff George Puckett has suffered significant damages, as alleged in more detail below.

## G.    Damages

110.    As a result of the wrongful conduct and causes of action alleged herein, Plaintiff Andrew Puckett has suffered and seeks to recover the following categories of compensable damages:

   a.  Economic damages and out-of-pocket costs incurred in connection with each of the acts of malicious prosecution, ADA discrimination, and violation of his civil rights as alleged herein;

   b.  Economic damages in connection with the interference with his property rights as a landowner and denial of his right to quiet enjoyment of his own land and property in violation of his rights to due process;

   c.  Physical pain and suffering (past and future) he has experienced and will experience as a result of his wrongful arrest, detention and incarceration; and

   d.  Mental anguish and emotional suffering damages (past and future) he has experienced and will continue to experience as a result of the acts of malicious prosecution, ADA discrimination, and violation of his civil rights, as alleged herein.

111.    As a result of the wrongful conduct and causes of action alleged herein, Plaintiff Jerry Puckett has suffered and seeks to recover the following categories of compensable damages:

a. Economic damages and out-of-pocket costs incurred in connection with each of the acts of malicious prosecution, ADA retaliation, and violation of his civil rights as alleged herein;

b. Economic damages in connection with the interference with his property rights as a landowner and denial of his right to quiet enjoyment of his own land and property in violation of his rights to due process;

c. Physical pain and suffering (past and future) he has experienced and will experience as a result of his wrongful arrest, detention and incarceration; and

d. Mental anguish and emotional suffering damages (past and future) he has experienced and will continue to experience as a result of the acts of malicious prosecution, ADA discrimination, and violation of his civil rights, as alleged herein.

e. Mental anguish and emotional suffering damages (past and future) he has experienced and will continue to experience as a result of Defendants' interference with his parental rights with respect to George Puckett.

112. As a result of the wrongful conduct and causes of action alleged herein, Plaintiff George Puckett has suffered and seeks to recover the following categories of compensable damages:

a. Economic damages and out-of-pocket costs incurred in connection with each of the acts of malicious prosecution, ADA retaliation, and violation of his civil rights as alleged herein;

b. Economic damages in connection with the interference with his rights as a resident of Unicoi County and invitee of a landowner and denial of his right to quiet enjoyment of his home in violation of his rights to due process;

c. Physical pain and suffering (past and future) he has experienced and will experience as a result of his wrongful arrest, detention and incarceration; and

d. Mental anguish and emotional suffering damages (past and future) he has experienced and will continue to experience as a result of the acts of malicious prosecution, ADA discrimination, and violation of his civil rights, as alleged herein.

113. Each Plaintiff further seeks to recover the following categories of damages:

a. Prejudgment and post-judgment interest;

b. Costs of court;

c. Reasonable and necessary attorneys' fees incurred by Plaintiffs through trial, along with reasonable and necessary attorneys' fees that may be incurred by Plaintiffs for any post-trial proceedings or appeal; and

d. Any further and additional relief to which Plaintiffs may be legally entitled, including but not limited to injunctive relief aimed at curing prior wrongful conduct and/or preventing similar wrongful conduct in the future.

## V. REQUEST FOR A JURY TRIAL

114. Each Plaintiff requests a jury trial on all issues that legally may be tried to a jury.

## VI. PRAYER FOR RELIEF

115. Plaintiffs request that each Defendant be summoned to appear and answer Plaintiffs' allegations. After a jury trial regarding the asserted claims and causes of action, Plaintiffs pray the court enter judgment in their favor on the asserted legal claims, assess monetary damages for the injuries alleged above, and award any other relief to which Plaintiffs are legally entitled.

**Dated: February 23, 2024**

Respectfully Submitted,

 /s/ Donald Puckett
Alexis Tahinci (TN BPR No. 031808)
**TAHINCI LAW FIRM PLLC**
105 Ford Avenue, Suite 3
Kingsport, TN 37663
Phone: (423) 406-1151
Fax: (423) 815-1728
alexis@tahincilaw.com

Donald Puckett (TX State Bar No. 24013358)
   *(admitted pro hac vice)*
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.
Wilmington, DE 19806
Phone: (302) 449-9010
dpuckett@devlinlawfirm.com

*Attorneys for Plaintiffs*
*Jerry Puckett, Andrew Puckett, and George Puckett*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

 /s/ Donald Puckett
Donald Puckett